UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| LARRY WILDER, | ) |
| | ) |
| Plaintiff, | )  No. 6:20-CV-59-HAI |
| | ) |
| v. | ) |
| | )  MEMORANDUM OPINION & ORDER |
| ANDREW SAUL, *Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

*** *** *** ***

Plaintiff Larry Wilder suffered a second heart attack on October 12, 2016. He was given stenting and an implanted cardiac defibrillator and did not return to work. D.E. 15-1 at 14.[1] On March 23, 2017, Wilder filed a Title II application for disability insurance benefits. *Id.* at 145. He dates the beginning of his disability period to February 23, 2017. *Id.* at 11. He has coverage to remain ensured until December 31, 2021. *Id.* at 12. The Social Security Administration denied Wilder's claims initially and upon reconsideration. *Id.* at 57-83. Then, on October 16, 2018, upon Wilder's request, Administrative Law Judge ("ALJ") Joyce Francis conducted an administrative hearing. *Id.* at 11. The ALJ heard testimony from Wilder (who was represented by an attorney) and impartial vocational expert ("VE") Betty Hale. *Id.* Wilder initially claimed several grounds for a finding of disability. *Id.* at 14. But during and after the hearing, those claims were whittled down to a claim that he is impaired due to coronary artery disease. *Id.*

Wilder was forty years old at the alleged onset date. D.E. 15-1 at 19. He has a high-school education. *Id.* Wilder has past relevant work experience as heavy equipment operator.

---

[1] Page number references to the administrative record are to the Bates Numbers at the bottom of each page, as submitted by the Commissioner at Docket Entry 15-1.

1

*Id*. at 39-40.  The VE testified that such work exceeds his residual functional capacity ("RFC"), and the ALJ accepted that testimony.  *Id*. at 19.  Although the ALJ found Wilder was "unable to perform any past relevant work," *id*., the ALJ also found he had the RFC to perform light work, *id*. at 16, and that he was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," *id*. at 20.  Accordingly, the ALJ found Wilder was "not under a disability" between the alleged onset date and January 31, 2019, the date of the ALJ's opinion.  *Id*.  The Appeals Council denied Wilder's appeal on January 7, 2020.  *Id*. at 1-5.

Wilder now brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's decision denying his application for disability insurance benefits.  Both parties consented to the referral of this matter to a magistrate judge.  D.E. 9.  Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  D.E. 10.  The Court, having reviewed the record and for the reasons stated herein, **GRANTS** Plaintiff's motion for summary judgment (D.E. 19) and **DENIES** the Commissioner's motion for summary judgment (D.E. 21).

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.  Under this sequential analysis, the claimant has the burden of proof at steps one through four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five.  *Id.*  The ALJ followed these procedures in this case.  *See* D.E. 15-1 at 12-13.

At the first step, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Wilder "has not engaged in substantial gainful activity since February 23, 2017, the alleged onset date." D.E. 15-1 at 13.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ found that Wilder did suffer the following severe impairments: "coronary artery disease (CAD), status post implantable biventricular cardiac defibrillator, pacemaker placement, and stenting; and history of myocardial infarction (20 CFR 404.1520(c))." D.E. 15-1 at 14.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then he is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Wilder failed to meet this standard. D.E. 15-1 at 15-16. Wilder argues the ALJ erred at this step.

If, as here, a claimant is not found disabled at step three, the ALJ must determine the claimant's RFC, which is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e). The ALJ determined that Plaintiff had the RFC to "perform light work as defined in 20 C.F.R. 204.1567(b), except he can frequently climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently crawl; can frequently be exposed to extreme heat, extreme cold, and vibration; and can occasionally be exposed to unprotected heights or dangerous moving machinery." D.E. 15-1 at 16.

At the fourth step, if a claimant's impairments do not prevent him from doing past relevant work (given the ALJ's assessment of his residual functional capacity), he is not

disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Wilder met this disability standard—he was unable to do his previous work with heavy equipment or as a construction worker. D.E. 15-1 at 19.

At the fifth step, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from doing other work that exists in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g). The ALJ found Wilder was not disabled at this step. D.E. 15-1 at 19-20. The ALJ explained that she asked the VE at the hearing "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." *Id.* at 20. She accepted the VE's testimony that Wilder could find work as, for example, an assembler, inspector, or machine attendant. *Id.* Wilder was therefore "not disabled" as defined by the regulations. *Id.*

## II. Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within

4

which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[2] It is within the province of the ALJ, rather than the reviewing court, to evaluate

---

[2] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other

the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

Concerning the listed impairments, an ALJ need not "address every listing" or discuss listings that a claimant clearly does not meet. However, an ALJ must consider a relevant listing "where the record raises a substantial question as to whether [the claimant] could qualify as disabled under a listing." *Smith-Johnson v. Comm'r Soc. Sec.*, 579 F. App'x. 426, 432 (6th Cir. 2014) (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). Substantial questions arise when specific evidence demonstrates that a claimant's impairments can reasonably meet or equal all the requirements of a listing. *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). In addition, when assessing a listing, an ALJ "'must actually evaluate the evidence,' compare it to the requirements of the relevant Listing, and provide an 'explained conclusion, in order to facilitate meaningful judicial review.'" *Harvey v. Comm'r Soc. Sec.*, No. 16-3266, 2017 WL 4216585, at *5 (6th Cir., Mar. 6, 2017) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x. 411, (6th Cir. Apr. 1, 2011)).

### III. Listing 4.02, Chronic Heart Failure

Wilder argues the ALJ erred at Step Three, which requires a finding of whether the claimant's impairment is sufficiently severe to meet or medically equal the criteria of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. D.E. 19-1 at 15.

---

symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

The issue here is whether Wilder met the requirements for Listing 4.02, chronic heart failure. The ALJ found that he did not. D.E. 15-1 at 15-16. Wilder argues that, on the contrary, he did meet the requirements. D.E. 19-1 at 5-7. The Commissioner argues the ALJ was correct. D.E. 21 at 9-11. Here is the regulatory definition:

> 4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.
>
> A. Medically documented presence of one of the following:
>
> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
>
> 2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);
>
> AND
>
> B. Resulting in one of the following:
>
> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
>
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
>
> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

>    a.   Dyspnea, fatigue, palpitations, or chest discomfort; or
>    b.   Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
>    c.   Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
>    d.   Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ erred in her analysis of Listing 4.02. As the regulatory definition states, "The required level of severity for this impairment is met when the requirements in both A and B are satisfied." The ALJ focused on subpart A(1) and reasoned:

> Specifically, the claimant's ejection fraction after the October heart attack improved to greater than 30%, 30% or less during a "stable" period [as] required for the listing, but the reading of 30% was only obtained on October 12, 2016 incident to an actual heart attack (2F, p.1). Subsequent records demonstrate ejections fractions that are uniformly over 30% (e.g., 5F, p.5) correlative with regular cardiology follow-ups that show the claimant doing well when compliant with conservative maintenance treatment, despite the fact he continues to ignore medical advice by smoking (e.g., 8F, pp.7, 11).

D.E. 15-1 at 16. Subpart A(1), on which the ALJ's analysis hinges, can be met when the patient exhibits "ejection fraction of 30 percent or less during a period of stability." Wilder points out that subpart A(1) can also be met when the patient exhibits "left ventricular end diastolic dimensions greater than 6.0 cm . . . during a period of stability." D.E. 19-1 at 5. He points to a September 26, 2017 echocardiogram which measured his left ventricular end diastole at 6.1 centimeters. *Id.* This is the "LVIDd" measurement at page 408 of the administrative record.[3]

---

[3] There does not appear to be any dispute that Wilder suffers from "systolic failure," as required by subpart A(1). *See* D.E. 19-1 at 3, 4, 9 & n.4, 10; D.E. 21 at 3.

8

The Commissioner appears to agree that the ALJ erred on this point and Wilder satisfies subpart A(1) on account of the 6.1-centimeter reading; he does not argue to the contrary. D.E. 21 at 10. But the Commissioner argues that the ALJ's determination should be upheld anyway because Wilder fails to satisfy subpart B. *Id.* The ALJ did not specifically address subpart B, aside from noting that Wilder was "doing well when compliant with conservative maintenance treatment, despite the fact he continues to ignore medical advice by smoking." D.E. 15-1 at 16. The Commissioner asks the Court to determine from the record that subpart B is not satisfied. Wilder argues the best way forward is to order an exercise tolerance test (ETT). D.E. 19-1 at 6-7. He asks the Court to remand the case and command the ALJ to order an ETT. *Id.* at 15.

The question now is whether the Court can properly determine whether Wilder satisfies subpart B of Listing 4.02 in the absence of any analysis by the ALJ specifically directed at subpart B. On the current record, can the court affirm the ALJ or grant benefits, or must the matter be remanded for further proceedings?

The Court cannot grant an award of benefits on the existing record. If a court determines that substantial evidence does not support the ALJ's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes the plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (citing *Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking. *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x

852, 865 (6th Cir. 2011); *Mowery*, 771 F.2d at 973. This is not a case in which the proof of disability is overwhelming or strong with no evidence to the contrary.

The question then is whether the Court should affirm the ALJ's decision or remand for further proceedings.

Wilder only qualifies under subpart B of Listing 4.02 if his systolic failure resulted in one of the circumstances described in subparts B(1), B(2), or B(3). In arguing that his symptoms satisfy Listing 4.02, Wilder quotes only subpart B(3). D.E. 19-1 at 6. He thereby appears to concede that his condition does not satisfy B(1) or B(2). The Commissioner persuasively explains why B(1) and B(2) are not supported by the record. D.E. 21 at 10. Subpart B(1) is satisfied only if the effects of Wilder's heart disease "very seriously limit [his] ability to independently initiate, sustain, or complete activities of daily living." But Wilder describes himself as being able to complete the normal activities of daily living. D.E. 15-1 at 180-84. Subpart B(2) requires "[t]hree or more separate episodes of acute congestive heart failure within a consecutive 12–month period," which Wilder does not claim to have suffered. It is therefore unsurprising that Wilder relies on B(3); he cannot satisfy B(1) or B(2).

Subpart B(3) is satisfied when the claimant is "[unable] to perform on an exercise tolerance test at a workload equivalent to 5 METs or less"[4] due to one of several specified conditions, including "dyspnea, fatigue, palpitations, or chest discomfort." The Court interprets Wilder as arguing that his record either satisfies subpart B(3) (which the ALJ would have discovered had she discussed all the relevant evidence) or, alternatively, that a remand is warranted so an ETT can be performed or attempted. D.E. 19-1 at 5-7.

---

[4] MET or "metabolic equivalent" is "a unit of measure of the rate at which the body expends energy that is based on the energy expenditure while sitting at rest and is equal to 3.5 milliliters of oxygen per kilogram of body weight per minute." Merriam-Webster, Medical Definition of MET, https://www.merriam-webster.com/dictionary/met#medicalDictionary (last visited January 4, 2021).

Wilder argues the record shows he continues to suffer dyspnea (shortness of breath) and fatigue ever since his October 2016 heart attack. D.E. 19-1 at 6-7. In support, he points to several places in the record where his treatment providers record his complaints of fatigue, weakness, and shortness of breath. *Id*. He concludes that "[t]he SSA or ALJ should have ordered an ETT . . . or at the very least discussed 'all of the relevant evidence'" related to Listing 4.02. *Id*. at 7. He argues that an ETT is "clearly warranted here . . . . The lone issue is Mr. Wilder's cardiovascular impairment, and the ETT is the perfect tool to [asses it]." *Id*.

The pivotal question now is whether Wilder was "[unable] to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to [dyspnea and/or fatigue], as defined at Listing 4.02(B)(3)(a).

In addition to shortness of breath, the record contains notations concerning Wilder's "exercise intolerance." On November 9, 2016, Wilder reported "worsened fatigue and worsened exercise intolerance." D.E. 15-1 at 323, 371. He complained of "shortness of breath and easy fatigability," but believed these were related to medication. *Id*. On February 13, 2017, he reported "stable fatigue and stable exercise intolerance," and "[h]is symptoms do not limit his activities." *Id*. at 319, 367. On April 19, 2017, he reported "stable dyspnea, stable fatigue and stable exercise intolerance," but "[h]is symptoms limit his activities." *Id*. at 359. On September 27, 2018, Wilder similarly reported "stable dyspnea, stable fatigue and stable exercise intolerance." *Id*. at 446. He reported that his symptoms "limit his activities." *Id*. However, he further reported "his exercise capacity has improved." *Id*.

Wilder's cardiologists, Dr. Pauig and Dr. Abe, each submitted two check-box style evaluations. D.E. 15-1 at 420, 424, 452, 455. Dr. Abe's September 27, 2017 Cardiac Medical Source Statement and Dr. Pauig's October 2, 2017 Statement indicate, among other things,

11

weakness, exertional dyspnea, chronic fatigue, dizziness, and near syncope (temporary loss of consciousness). *Id*. at 420, 424. Dr. Pauig's September 27, 2018 Cardiac Medical Source Statement indicates, among other things, weakness, exertional dyspnea, chronic fatigue, dizziness, and near syncope. *Id*. at 455. Dr. Abe's September 28, 2018 Cardiac Medical Source Statement indicates, among other things, exertional dyspnea, chronic fatigue, and exercise intolerance. *Id*. at 420. Of the four Statements, this is the only one where "exercise intolerance" is checked.

The record contains no specific notation from a medical provider indicating that Wilder could not perform an ETT as described in subpart B(3) of Listing 4.02. But neither was an exercise test ordered. And the record indicates consistent physical symptoms that could suggest inability to perform an ETT "at a workload equivalent to 5 METs or less." The ALJ made no findings relative to subpart B, so there is no underlying decision for which the Court could find substantial evidence or a lack thereof.

The Commissioner points out that in this case "two state agency physicians explicitly considered whether Plaintiff's conditions medically equaled a listing, and concluded that they did not." D.E. 21 at 11. First, a Dr. Ignatio considered Listing 4.02, but found Wilder was not disabled. D.E. 15-1 at 63-69. Second, a Dr. Brown made the same finding. *Id*. at 78-83. But these reports provide no analysis relative to the Listing 4.02 criteria. Nevertheless, the ALJ gave "significant weight" to these opinions. *Id*. at 18. Because these reports contain no analysis relevant to subpart B(3), they do little to answer the question at hand.

Here, the ALJ erred in regard to subpart A, and made no findings as to subpart B. Had the ALJ properly concluded that subpart A was satisfied, she very well could have found

substantial evidence that subpart B(3) was satisfied or determined that more testing was necessary.

The Court has surveyed numerous cases from this Circuit concerning Listing 4.02. One case that resembles this one is *Burrell v. Astrue*, No. 5:11-CV-1627, 2012 WL 4461524 (N.D. Ohio Sept. 25, 2012) (remanding for reconsideration of subpart B(3)). First, the ALJ in *Burrell* erred in finding that Burrell did not satisfy subpart A. *Id.* at *6-7. The mistake concerned whether Burrell was "stable" when he had "a LVED measurement of 6.03 cm." *Id*. As for subpart B, the ALJ noted that Burrell was able to perform daily activities. The reviewing court found that this observation was not relevant to subpart B(3).[5] Burrell was subjected to an ETT (the "Bruce Protocol"), which "was stopped at 3 minutes at 4.8 METS due to Plaintiff's leg weakness and extreme shortness of breath." *Id.* at *7. The record in this case does not contain an ETT, but the record does consistently indicate Wilder suffered from weakness, dizziness, shortness of breath, and exercise intolerance. The *Burrell* court reasoned, "Without more as to whether Plaintiff's heart condition met or equaled Listing 4.02(A) and (B)(3)(a), the Court cannot ascertain whether substantial evidence supports the ALJ's determination." *Id*. Thus, the case was remanded "for redetermination and analysis" as to whether the claimant satisfied Listing 4.02. *Id*. The court declined to address the claimant's other issues. *Id*.

Another case, *Dew*, can be differentiated. There, the ALJ did not address subpart B, and the court considered whether the claimant nonetheless raised a "substantial question" as to whether B(3) was satisfied. *Dew v. Comm'r of Soc. Sec.*, No. 15-CV-12660, 2017 WL 744238, at *4 (E.D. Mich. Feb. 27, 2017). The court found no indication Dew was unable to perform an ETT because the record showed Dew was advised to exercise, and she engaged in slight moderate exercise and found it beneficial. *Id.*; *see also Dew v. Comm'r of Soc. Sec.,* 2016 WL

---

[5] The Westlaw version misprints "(B)(3)" as (13)(3)."

11258761, at *14 (E.D. Mich. Nov. 17, 2016) (Report & Recommendations, describing Dew's "exercise regimen"). The record here in contrast contains no advice to exercise or record of an exercise regimen. This case is also different from *Coogle*, where the record contained "ample evidence concerning the plaintiff's ability to perform physical activity." *Coogle v. Saul*, No. 5:20-CV-137-DCR, 2020 WL 5995588, at *7 (E.D. Ky. Oct. 9, 2020). Coogle had endured "a lengthy course of physical therapy" and no longer suffered from dyspnea. *Id.*

Because the ALJ in this case erred in regard to subpart A and failed to discuss subpart B of Listing 4.02, the ALJ's "cursory conclusion . . . prevents the Court from engaging in meaningful judicial review of whether the ALJ's decision is supported by substantial evidence." *Oglesby v. Comm'r of Soc. Sec.*, No. 1:13-CV-668, 2014 WL 3845931, at *7 (S.D. Ohio Aug. 5, 2014).

> When considering whether a claimant's impairment "meets or equals" a listed impairment in the appendix of the regulations, we have held that an ALJ is required to "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at step three was supported by substantial evidence." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011).

*Pasiak v. Comm'r of Soc. Sec.*, 800 F. App'x 301, 304 (6th Cir. 2019). "[A] reasoned and explained conclusion is not merely a formalistic requirement [but] a necessary component for this Court to ascertain whether the ALJ's decision was supported by substantial evidence." *Risner v. Comm'r of Soc. Sec.*, No. 1:11-CV-36, 2012 WL 893882, at *4-5 (S.D. Ohio Mar. 15, 2012) (remanding when the ALJ failed to provide any reasoning in support of his finding that the listing was not met).

Of course, there is no "*per se* rule that every ALJ must discuss in detail any section of the Listing which might conceivably be implicated by the claimant's severe impairments." *Reiser v.*

14

*Comm'r of Soc. Sec.*, No. 11-CV-1010, 2012 WL 6138987, at *7 (S.D. Ohio Dec. 11, 2012), *recommendation adopted*, 2013 WL 139890 (S.D. Ohio Jan. 10, 2013).  But here, Wilder has put forth specific evidence showing he could reasonably meet or equal the criteria for disability under Listing 4.02 (specifically at issue subpart B(3)(a)), yet the ALJ's decision does not include a discussion of this evidence in the context of the listings.  *Pasiak*, 800 F. App'x at 305; *Oglesby*, 2014 WL 3845931, at *7.

Wilder's chronic shortness of breath, weakness, fatigue, exercise intolerance, and dizziness permeate the record.  Granted, Wilder was able to care for himself.  And he did make a trip to the Dollywood theme park "but had to stop and rest frequently."  D.E. 15-1 at 436.  But this is evidence that needs to be weighed as to whether he could not "perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to [dyspnea and/or fatigue]." When the evidence needs to be weighed and evaluated in light of the requirements of the listing, that is "the ALJ's task and not the Court's."  *Vaughan v. Comm'r of Soc. Sec.*, No. 2:16-CV-454, 2017 WL 2363452, at *5 (S.D. Ohio May 31, 2017), *report and recommendation adopted*, 2018 WL 1521811 (S.D. Ohio Mar. 28, 2018).  A remand is therefore necessary.

The Commissioner is not required to purchase an exercise test in every case.  Instead, he considers whether to purchase an exercise tolerance test when, in relevant part, "There is a question whether your cardiovascular impairment meets or medically equals the severity of one of the listings, or there is no timely test in the evidence we have (see 4.00C9), and we cannot find you disabled on some other basis[.]"  20 C.F.R. Part 404 subpart P, app. 1, listing 4.00(C)(6)(i). The Commissioner will not purchase an exercise tolerance test when he can make a determination based on the evidence already in the record.  *Id*.

15

The Court will not order an exercise test at this time, but the Commissioner of course will be free to consider whether such a test is warranted.

Wilder raises other issues with the ALJ's decision, including whether the treating-physician rule was properly followed. The Court declines to address those disputes. Upon remand, the Commissioner will be free to reconsider those issues, as well as any others.

## IV.  CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment (D.E. 19) is **GRANTED.**

(2) The Commissioner's Motion for Summary Judgment (D.E. 21) is **DENIED**.

(3) The Court **REVERSES** the ALJ's decision and **REMANDS** this matter to the Commissioner under the fourth sentence of 42 U.S.C. § 405(g) for further consideration of whether Wilder satisfies the criteria of Listing 4.02.

This the 20th day of January, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge